# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 CR 772-19 |
| | ) | |
| v. | ) | Judge Bucklo |
| | ) | |
| GREGORY HAWTHORNE, | ) | Magistrate Judge Cole |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant, Gregory Hawthorne, seeks to suppress evidence seized in what he claims was an illegal search of his apartment, as well as his post-arrest statement. The evidence taken from Mr. Hawthorne's apartment on the night of March 6, 2013, was rather substantial: 69 zip-lock bags of what appeared to be marijuana, 210 tin foil packets containing a white powder suspected to be heroin, a little over $4000 in cash, and a semi-automatic pistol with eleven .40 caliber rounds and an additional two boxes of .40 caliber ammunition. It was not, however, what Officer Varchetto had in mind when he applied for the search warrant for the apartment.

His John Doe informant had told him that he had been in Mr. Hawthorne's second floor apartment in the previous 48 hours and had seen a duffel bag full of firearms and ammunition. Mr. Hawthorne, the resident of the apartment (along with his girlfriend and his three children), being a convicted felon, would have been violating 720 ILCS 5/24.11(a). Mr. Hawthorne argues that the warrant, based entirely on John Doe's information, was insufficient to support a finding fo probable cause, and that the good faith exception cannot apply because Officer Varchetto acted with a reckless disregard for the truth of John Doe's story. In fact, it is claimed that Officer Varchetto knew it was

false.

On March 5, Officer Varchetto submitted the following complaint for a warrant in the Circuit Court of Cook County:

> On 05Mar13, I had occasion to speak with an individual who will now be known as John Doe. John Doe related to me that John Doe was inside the 2nd floor apartment located at 4123 W Potomac within the last 48 hours where John Doe observed a large duffel bag that contained approximately 10 firearms. John Doe further related that while inside the unit, an unknown male black entered the apartment and spoke with Gregory Hawthorne about purchasing a firearm at which time Gregory Hawthorne opened the black duffel bag and showed several firearms to the male black who was inquiring to purchase a gun from Gregory Hawthorne. John Doe observed approximately 10 firearms in total including semi automation [sic] pistols, revolvers, and long guns that were partially exposed hanging out of the duffel bag that was on the floor in the living room. John Doe did not observe the unknown male black purchase a firearm from Gregroy Hawthorne while john Doe was inside the 2nd floor apartment at 4123 W Potomac, but did observe the unknown male black leave and all of the firearms were still inside the large black duffel bag on the floor of the living room when John Doe left.

(Dkt. # 596-1). Officer Varchetto went on to explain that John Doe positively identified a photo of Gregory Hawthorne and pointed out Mr. Hawthorne's residence when Officer Varchetto drove him by there. John Doe told him the residence was an illegal conversion of a single family home and that Gregory Hawthorne lived on the second floor with his girlfriend. Officer Varchetto pointed out that Mr. Hawthorne was a convicted felon.

Officer Varchetto appeared before a Cook County Circuit Court Judge along with John Doe, who was available for questioning. None apparently occurred. *See United States v. Glover,* 755 F.3d 811, 817 (7th Cir. 2014)("Without any record we must assume that Doe did not testify."). The judge

2

signed the complaint and issued the search warrant.[1] Two dozen or so police officers executed the warrant and came up with the items listed above.

When a search is authorized by a warrant, a court gives deference to the issuing judge's conclusion that probable cause was established. *United States v. Sims*, 551 F.3d 640, 643–44 (7th Cir.2008); *United States v. Garcia*, 528 F.3d 481, 485 (7th Cir.2008). But that deference is neither abject, nor "boundless." *United States v. Leon*, 468 U.S. 897, 923 (1984). "We defer to the issuing judge's initial probable cause finding if there is 'substantial evidence in the record' that supports his decision." *Sims*, 551 F.3d at 644. A search warrant affidavit establishes probable cause when "'it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *Id.*

The judge issuing the warrant must make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that evidence of a crime will be found in a particular place. *Sims*, 551 F.3d at 644; *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir.2002). But, the judge "may not solely rely upon 'conclusory allegations' or a 'bare bones' affidavit when issuing a warrant." *Sims*, 551 F.3d at 644; *United States v. Leon*, 468 U.S. 897, 915 (1984).

In the case of a warrant affidavit supported by the word of an informant, the inquiry into probable cause encompasses several factors, including: (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4)

---

[1] The judge's name and number are illegible. The government claims that warrant was issued by a "Magistrate Judge", presumably referring to one here in the Northern District of Illinois [Dkt. # 637, at 3], but that is clearly not the case. Elsewhere in their brief the government refers to the judge as "Judge Ford."

the interval between the date of the events and the police officer's application for the search warrant *Sims*, 551 F.3d at 644; *United States v. Jones*, 208 F.3d 603, 609 (7th Cir. 2000). The status of the individual reporting to the police is also significant in determining the credibility of the information he provides. Identified eyewitnesses and victims are deemed reliable, *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir.2001), but an unidentified tipster like our "John Doe" here, with whom the police have had no prior involvement, stands on different footing. *United States v. Hammond*, 351 F.3d 765 (6th Cir.2003); *Draine v. Bauman*, 708 F.Supp.2d 693, 700 (N.D.Ill. 2010).

In this instance, John Doe provided a rather detailed and "fresh' account of what he saw at 4123 W Potomac. No more than 48 hours had passed since he visited the residence. He described the duffel bag and its visible contents. He paced it as being located in the living room of the apartment on the second floor. The apartment looked to him to be a conversion of a single family home into a two-unit building – a fact that might not be readily apparent to one who had not been inside. And, the location of the apartment would also not have been apparent to one who had not visited it.

Mr. Hawthorne argues that the use of the alias, "John Doe," suggests that the information provided was false. The reason for the use of such a pseudonym in a warrant application is, as the cases recognize and as Mr. Hawthorne's brief concedes, generally to protect the informant from reprisals. Mr. Hawthorne contends that there would have been no point to that here, as Mr. Hawthorne could identify who had been at his residence in those two days before the search. The only point to a concealed identity, then, would be if the story were false. In other words, "John Doe" might have had a beef with Mr. Hawthorne or might have been a rival. *See United States v. Bell*,

4

585 F.3d 1045, 1050 (7th Cir. 2009). While both are possibilities, that is all they are – and highly tendentious ones at that.

Common sense and human experience – which always have a role to play, *United States v. Montoya De Hernandez,* 473 U.S. 531, 542 (1985); *Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.); *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir.2009); Posner, How Judges Think at 116 (Harv. Univ. Press 2008) – are not in the slightest offended by the conclusion that John Doe was present while Mr. Hawthorne was selling his illegal wares out of his second floor apartment. Had Doe not been a person with a "criminal history," [Dkt. #596, Ex. A at 3, Complaint for Search Warrant], perhaps Mr. Hawthorne's argument would be more compelling. But it is precisely because Doe had a shady past that he would be trusted in the apartment while Mr. Hawthorne was conducting "business" with a "customer" in what, for all practical purposes, was his store.

It is no doubt true that given the dubious nature of his enterprise, Mr. Hawthorne would have been selective about his clientele and those he let into his apartment. But, it is precisely because of that that it was reasonable for the Officer to use the "John Doe" designation. Concealing Doe's identity made it more difficult for Mr. Hawthorne to identify the one visitor who ratted him out. After all, the police did not know the number of visitors to the apartment. But even if there had only been two – Doe and the prospective customer – in the 48-hour period between Doe's visit and the police raid, was it not far more responsible for the police to attempt as best they could to conceal Doe's true identity, rather than taking no protective steps and simply identifying him. The answer

is obvious.² In short, there is nothing implausible about Doe's statement that Mr. Hawthorne had an open duffel bag full of guns when he visited the second floor apartment.

Moreover, the Vice Lords run open air drug markets. Criminal activities, as the government points out, regularly take place in the presence of others. There are, obviously, often witnesses to testify about criminal activity. It happens often enough that there is a Seventh Circuit Pattern Criminal Jury Instruction – 5.07 – covering the eventuality. https://www.ca7.uscourts.gov/Pattern_Jury_Instr/7th_criminal_jury_instr.pdf. It is certainly far from implausible. Indeed, Doe's apparently unsavory past would help to explain why Mr. Hawthorne would have trusted him and conducted his illicit affairs in his presence.

Mr. Hawthorne next argues that Officer Varchetto's affidavit said says nothing about any experience he had with "John Doe" that would lead him to believe he was a reliable informant. There are two possibilities, neither of which advance Mr. Hawthorne's argument: either Doe had no track record, or the warrant application was underinclusive. In either event, the argument against the validity of the warrant fails. Officer Varchetto did seek to corroborate the information he was provided: "Doe" identified a photograph of Mr. Hawthorne, and he identified the building where Doe lived and pointed out the second floor residence where he saw the guns. In fact, it turned out to be true that Mr. Hawthorne was operating out of the second floor – a fact Doe was unlikely to know unless he had been in the apartment.

Finally, Doe did appear before the issuing judge and was prepared to testify under oath. That he was willing to do so has at least some "minimal utility." *United States v. Robinson*, 724 F.3d 878,

---

² Perhaps Officer Varchetto gave little thought to the paradox that Mr. Hawthorne's counsel poses and identified his informant as "John Doe" as a matter of course. But that does not show that the Officer thought he was being gulled by Doe.

885 (7th Cir. 2013).³ And *Robinson* also held that the exclusionary rule does not bar evidence seized by officers acting in good faith on a warrant issued by a judge. Basically, if the police officer misses the mark on a warrant application, but it is nevertheless "blessed" by a judge, the officer can act on it in good faith. In *United States v. Leon*, 468 U.S. 897, 922–23 (1984), the Supreme Court identified four situations in which the good faith exception does not apply: when the affiant misleads the judge with a reckless or knowing disregard for the truth, when the judge wholly abandons the judicial role, when the affidavit is "bare bones" or "so lacking in indicia of probable cause" that reliance is unreasonable, and when the warrant is facially deficient in that it fails to specify the place to search or the items to seize. 468 U.S. at 923. In this case, Mr. Hawthorne charges that Officer Varchetto acted with reckless disregard for the truth.

At this stage, Mr. Hawthorne has the burden of making a "substantial preliminary showing" of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth. *Glover*, 755 F.3d at 820. This is a burden of production; if he succeeds, proof by a preponderance of the evidence is required at a *Franks* hearing

---

³ The government submits that the Seventh Circuit has sustained warrants where corroboration by photo and drive-by were sufficient. (Dkt. # 637, at 6). One that they cite is *Sims*, but in that case, corroboration consisted of not only photo identification and drive-by, "*importantly*, [the informant] was also presented to and questioned by the issuing judge." 551 F.3d at 645 (emphasis supplied). The judge's ability to test the informant's credibility through confrontation was significant in the court's view. However, the court did not say that questioning by the judge was indispensable to its finding that there was probable cause. Indeed, in many of the reported cases the informant is not questioned by the judge and the warrants are sustained.

The government also cites *Glover*, 755 F.3d at 811. There, the minimal corroboration made the warrant application dicey, but what finally scuttled it for the Seventh Circuit was the fact that it provided absolutely no information about the informant from which credibility could be assessed. *Id*. at 818. Here, the judge knew that Doe had a criminal history and the existence of any pending investigations. Armed with that information, the judge had a basis to assess Doe's credibility. Added to this was Doe's appearance before the judge which does have some slight tendency to bolster credibility. *Id.*, at 817.

7

itself. 755 F.3d at 820. Mr. Hawthorne argues that reckless disregard is shown by what he calls Officer Varchetto's minimal efforts to corroborate John Doe's story and the fact that Officer Varchetto knew that Doe's statements were false as evidenced by his failure to question Mr. Hawthorne about the duffel bag following his arrest.

As evidence of Officer Varchetto's insufficient efforts to corroborate Doe, Mr. Hawthorne argues that Officer Varchetto made no attempt to make a controlled gun buy.[4] While he insists that this could "readily" have been done, he does not explain how or by whom it could have been accomplished. (Memorandum at 13)[Dkt 596 at 13]. Not only was this not a particularly realistic undertaking, it ignores the need for immediate action. But the question is not what more the police could have done but whether what they did was sufficient. It is easy to second guess the police, especially when the guesser is a highly skilled lawyer, well versed in the often inconsistent outcomes of Fourth Amendment cases.

But even a lawyer as able as Mr. McLeese does not hint at who would attempt the controlled buy. It would have to be someone that Mr. Hawthorne trusted and more than that, someone who he would believe wanted to buy a gun. Where would such a person be found? Doe would appear not to fill the bill, and in any event, a subsequent visit to purchase a gun by him would have been a terribly risky undertaking, to say the least. Since Doe did not buy a gun when he had just had the opportunity, his sudden reappearance might well have spooked Mr. Hawthorne with potentially

---

[4] The government has not responded to this. Failure to contest a point is not necessarily a waiver, but it is a risky and sometimes fatal tactic *Law v. Medco Research, Inc*., 113 F.3d 781, 787 (7th Cir. 1997). "The ostrich-like tactic" of ignoring arguments leveled against one's position is "pointless." *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987). It is also at odds with the "advocate's job" which is " to make it easy for the court to rule in his client's favor." *Dal Pozzo v. Basic Machinery Co., Inc*., 463 F.3d 609, 613 (7th Cir. 2006).

serious consequences for Doe. And there was no suggestion that the police had readily at hand a "buyer" whom Mr. Hawthorne knew and who would be willing to cooperate with the police. These and other considerations would have counseled against the course of action which in the repose of hindsight seems simple and which the defendant quite illogically posits "demonstrates, at a minimum, a 'reckless disregard of the truth.'" (Memorandum at 13)[Dkt. 596].

Mr. Hawthorne's other contention is that, if Officer Varchetto had truly credited "John Doe's" story, the police would have questioned Mr. Hawthorne about the duffel bag following his arrest. That he did not do so is for Mr. Hawthorne proof positive that the Officer *never* believed Doe's story. (Memorandum at 12)[Dkt. 596].[5] But the conclusion does not follow from the premise. If Officer Varchetto did not believe Doe, why would he have gone through the pointless and potentially dangerous exercise of conducting a search at all and needlessly risk his safety and that of some two dozen fellow officers, including members of the swat team? Yet, that is exactly what happened. (*See* Memorandum, Ex B). And finally, Mr. Hawthorne was on an "investigative hold" for homicide, but Officer Varchetto asked no questions about that topic, either. *Id*. Careless police work is a far more likely conclusion than knowing disbelief.

Finally, "[i]nferences from silence are perilous." Posner, Cardozo: A Study In Reputation, 37 (1990); *Coleman v. Interco, Inc. Division Plans*, 933 F.2d 550, 552 (7th Cir. 1991)(same). Silence generally is so ambiguous that it is of little probative force, inviting the fact finder to speculate as to its meaning. *United States v. Hale*, 422 U.S. 171, 176 (1975). Inefficient and inattentive police work is a more likely conclusion than the one the defendant arrives at. Mr. Hawthorne was arrested for having an illegal, semiautomatic weapon, significant quantities of ammunition, and a substantial

---

[5] The government ignores this argument.

amount of drugs. This was a win for Officer Varchetto, and apparently that was enough for him.

The Seventh Circuit has said that a "reckless disregard for the truth" can be shown by demonstrating that the officer "entertained serious doubts as to the truth" of the statements, had "obvious reasons to doubt" their accuracy," or failed to disclose facts that he or she "knew would negate probable cause." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003); *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012). That Officer Varchetto "'could have done more work does not meet the high standard for requiring a Franks hearing.'" *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009)(quoting *United States v. Swanson*, 210 F.3d 788, 791 (7th Cir.2000). "Even if the police's failure to corroborate the informant's claims was negligent, 'a little negligence—actually even a lot of negligence—does not the need for a Franks hearing make.'" *Johnson*, 580 F.3d at 671.

Overall, the warrant in this case was not so lacking in indicia of probable cause that reliance upon it was unreasonable. Officer Varchetto took at least some minimal steps to verify John Doe's tip. The tip was rather detailed and fresh. Further corroboration efforts suggested by Mr. Hawthorne may well have been considered and rejected given that John Doe's tip was that Mr. Hawthorne was selling a dangerous cache of weapons out of his apartment. Waiting would have been irresponsible.

Finally, Officer Varchetto reasonably relied on the state court judge's issuance of the warrant in good faith. Because that warrant was no so lacking in indicia of probable cause that reliance on its validity was objectively unreasonable, the motion to suppress must be denied. *Robinson*, 724 F.3d at 886.

## CONCLUSION

It is respectfully recommended that the defendant's motion to suppress [Dkt. #595 ] be denied.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/2/14

Specific, written objections to the Report and Recommendation must be filed with the Clerk of the District Court for the Northern District of Illinois, 219 S. Dearborn, 20th Floor, Chicago, IL 60604, within fourteen (14) days of being served with a copy of the Report and Recommendation. Failure to file specific, written objections within the specified time waives the right to appeal this Report and Recommendation. *See* Fed.R.Civ.P. 72(b)(2); 28 U.S.C. 636(b)(1)(C); *United States v. Brown*, 79 F.3d 1499, 1504, n. 4 (7th Cir. 1996); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir.1995); *Video View, Inc. v. Studio 21 Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).